868 F.2d 644
 M. Joseph ROCKS, Frank A. Salvatore, Christopher R. Wogan,
Joan L. Krajewski and John L. Kelly, Appellants,
v.
CITY OF PHILADELPHIA, W. Wilson Goode, Curtis Jones, Jr.,
Minority Business Enterprise Council, Benjamin F.
Ellis and Angela Dowd-Burton, Appellees.
 No. 88-1616.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 11, 1989.
Decided March 1, 1989.
 
 Hugh J. Bracken (argued), Richard A. Sprague, Randi J. Vladimer, Sprague, Higgins & Creamer, Philadelphia, Pa., for appellants.
 Seymour Kurland (argued), Carl Oxholm, III, Office of the City Solicitor, Philadelphia, Pa., for appellees.
 Before HIGGINBOTHAM, COWEN and ALDISERT, Circuit Judges.
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 The appellants are five Philadelphia residents and taxpayers. They are not now, nor will they in the future be, involved in the construction business. They have appealed from a district court judgment dismissing their complaint against the city and its officials for lack of standing. The complaint asserted an equal protection violation resulting from the application of minority business enterprise participation requirements ("MBE") to a city construction project. The question for decision is whether, as contended, the appellants have standing to assert this equal protection claim based upon their status as residents and taxpayers. They rely on the teachings of Bowen v. Kendrick, --- U.S. ----, 108 S.Ct. 2562, 101 L.Ed.2d 520 (1988) and Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). We agree with the district court and will affirm.
 
 
 2
 Jurisdiction was proper in the trial court based on 28 U.S.C. Sec. 1331. Jurisdiction on appeal is proper based on 28 U.S.C. Sec. 1291. Appeal was timely filed under Rule 4(a), F.R.App.P.
 
 
 3
 The court is reviewing the dismissal of the complaint for failure to state a claim on which relief can be granted. Rule 12(b)(6), Fed.R.Civ.P. The applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir.1985); Rogin v. Bensalem Twp., 616 F.2d 680, 685 (3d Cir.1980), cert. denied sub nom., Mark-Garner Assocs., Inc. v. Bensalem Twp., 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).
 
 I.
 
 4
 In February of 1988, the City of Philadelphia issued invitations to bid on a portion of the construction of the Criminal Justice Center. The bid specifications required 15% minority owned business enterprise participation and 10% female owned business enterprise participation. App. at 52. On March 4, 1988, the Department of Public Property issued Addendum No. 1, giving notice to all prospective bidders that, for this project, the required minority business enterprise participation was increased to 35%, and "at least 45% of the employment hours for the work performed on-site for this bid package shall be performed by qualified minority and female workers, made up of 35% minority and 10% female." App. at 53; see Philadelphia Code, ch. 17-500 to 504 (giving the City of Philadelphia discretion to set minority business enterprise participation requirements).
 
 
 5
 Addendum No. 1 was circulated to potential contractors. There is no evidence in the record that any objections were raised by the appellants or by any potential contractor at any time prior to bid opening. Three bids were submitted and the city announced the project would be awarded to Cornell/Coastal Steel. It was at this time that appellants filed a complaint in the Philadelphia County Court of Common Pleas. The case was then removed to the federal district court for the Eastern District of Pennsylvania.
 
 
 6
 In the complaint, Rocks, and the other plaintiffs claimed that: (1) the increased minority participation requirements were violative of the equal protection clause of the fourteenth amendment of the constitution; (2) the increased requirements violated the constitutional guarantee of substantive due process; (3) as a matter of state law, the mayor and the city agencies lacked the power to increase the minority business enterprise participation requirements; and (4) the agency proceeding to increase minority participation did not comply with the procedural requirements of state law.
 
 
 7
 The district court held that the plaintiffs did not have standing to challenge the MBEs on equal protection grounds. The court acknowledged that Rocks and the other plaintiffs possessed what has been described as article III or "pure" standing. App. at 125. However, the court found that the nonconstitutional, prudential limitations on standing had not been satisfied. App. at 126; see Valley Forge Christian College v. Americans United for the Separation of Church and State, 454 U.S. 464, 471, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); Duke Power Co. v. Carolina Environmental Study Group, 438 U.S. 59, 72-82, 98 S.Ct. 2620, 2630-35, 57 L.Ed.2d 595 (1978); Singleton v. Wulff, 428 U.S. 106, 112, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976); Warth v. Seldin, 422 U.S. 490, 495, 95 S.Ct. 2197, 2203, 45 L.Ed.2d 343 (1975). The court stated that the appellants were "attempt[ing] to raise the equal protection rights of non-minority businessowners and workers with whom they have no special relationship." App. at 126.
 
 
 8
 The district court also found that appellants failed to state a claim for violation of substantive due process. App. at 131-33. Relying on Pace Resources, Inc. v. Shrewsbury Twp., 808 F.2d 1023 (3d Cir.) cert. denied, 482 U.S. 906, 107 S.Ct. 2482, 96 L.Ed.2d 375 (1987), the court held that plaintiffs had not met the pleading requirements necessary to pursue such a claim. See Rogin, 616 F.2d at 689 (quoting Williamson v. Lee Optical, 348 U.S. 483, 487-88, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955)). The court said that the complaint raised conclusory allegations only, and that without more, the complaint did not qualify as a substantive due process attack. App. at 132. Appellants have not challenged this ruling before us. Having disposed of the federal issues, the district court then remanded the proceeding to the state court. Rocks and the other plaintiffs appealed the district court's decision denying them standing.
 
 II.
 
 9
 Before addressing appellants' main contentions, based on Flast v. Cohen and Bowen v. Kendrick, it is necessary to consider satellite contentions that have been raised, but not strenuously pressed by the parties.
 
 A.
 
 10
 In their brief appellees suggested that this case may be moot. Yet at the beginning of oral argument, the City Solicitor candidly explained to the court:
 
 
 11
 I think I should address myself to the mootness issue quickly. The principle involves the one of capable of repetition, yet evading review.
 
 
 12
 And we raised that point to the Court so that you would have all the facts in front of you.
 
 
 13
 It is my basic position, however, that on the narrow test, on that extreme requirement, that this case probably is not moot, Your Honor.
 
 
 14
 Tr. of Oral Argument at 17. This proposition is supported by the case law. See County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979); Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1108 (3rd Cir.1985), cert. denied, 475 U.S. 1013, 106 S.Ct. 1190, 89 L.Ed.2d 305 (1986). Accordingly, we proceed on the assumption that this case is not moot.
 
 B.
 
 15
 Appellants also seem to suggest, at least at oral argument, that we should apply Pennsylvania case law respecting the broad rights of municipal taxpayers to sue local government agencies, and that this case may fall "within the ambit of the well-defined rule that a taxpayer may challenge 'wrongful expenditure of tax monies and the wasting of assets.' Loewen v. Shapiro, 389 Pa. 610, 613, 133 A.2d 525, 527 (1957)." Price v. Philadelphia Parking Auth., 422 Pa. 317, 221 A.2d 138, 143 (1966); see also Page v. King, 285 Pa. 153, 156, 131 A. 707, 708 (1926) ("[a]ppellant's right as a taxpayer, having an interest in public funds, to maintain a bill to prevent an unauthorized or unlawful expenditure of state money cannot now be questioned. Frame v. Felix, 167 Pa. 47, 49, 31 A. 375, 27 L.R.A. 802 [ (1895) ]. It is immaterial whether the individual loss is great or small: the court will not stop to inquire into that.") Notwithstanding the force of this argument in a state court proceeding, it has been foreclosed here.
 
 
 16
 The Supreme Court has emphasized that irrespective of whether the complaint is against municipal or federal agencies, federal standing propositions apply in federal court, including, inter alia, whether the party has "a personal stake in the outcome of the controversies," Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962), and whether the dispute touches upon "the legal relations of parties having adverse legal interests." Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937); see Flast v. Cohen, 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968). "In a federal trial court ... standing to sue is determined by federal law." Frissell v. Rizzo, 597 F.2d 840, 850 (3d Cir.), cert. denied, 444 U.S. 841, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979) (citing Baker, 369 U.S. at 204, 82 S.Ct. at 703).
 
 
 17
 Accordingly, the standing issue in this case will be decided by federal law and not that of Pennsylvania. We now address the main contention presented by the appellants in this appeal. Because the complaint was dismissed on the pleadings, we must, and do, accept as true all material allegations of the complaint, and construe them in favor of the complaining party. Warth, 422 U.S. at 501, 95 S.Ct. at 2206; Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).
 
 III.
 
 18
 There are two inquiries to federal court standing. The first is the "pure" article III requirement. This requirement is related to the constitutional limitation of judicial power to "cases and controversies." It reflects the traditional notion that "article III judicial power exists only to redress or otherwise to protect against injury to the complaining party." Warth, 422 U.S. at 499, 95 S.Ct. at 2205. The legislative and coercive powers of an article III court are therefore properly involved only in aid of that remedial function, not as an independent justification for the exercise of jurisdiction.
 
 
 19
 The second requirement is the prudential limitation on the exercise of federal jurisdiction.
 
 
 20
 Beyond the constitutional requirements, the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing. Thus, the Court has held that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."
 
 
 21
 Valley Forge, 454 U.S. at 474, 102 S.Ct. at 760 (quoting Warth, 422 U.S. at 499, 95 S.Ct. at 2205). It was on this basis that the plaintiffs in this case were denied standing. The district court held that prudential considerations militated against permitting these plaintiffs to assert the rights of non-minority contractors and workers. The court stated that the prudential requirements had not been satisfied because appellants were asserting the rights of "non-minority business owners and workers with thom they had no special relationship." App. at 126.
 
 
 22
 We agree with the district court that the appellants have established article III standing. As municipal taxpayers suing a municipality and not as federal taxpayers suing a federal agency, they have alleged that someone could "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979), and that injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision." Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1924, 1926, 48 L.Ed.2d 450 (1976); see also Valley Forge, 454 U.S. at 472, 102 S.Ct. at 758. Contemplating the appellants' allegation, we think that an article III injury to contractors and bidders at large has been made out.
 
 
 23
 But the critical inquiry here is whether these particular appellants satisfy the prudential requirements as well. The question is whether these appellants have sustained a proximate, individual, and addressable injury, based solely upon their status as municipal residents and taxpayers.
 
 
 24
 Again, we agree with the district court. Abundant Supreme Court case law supports the district court's determination that the prudential requirements for standing were not satisfied. See Tileston v. Ullman, 318 U.S. 44, 46, 63 S.Ct. 493, 494, 87 L.Ed. 603 (1943) (denying standing to a plaintiff raising a claim under the fourteenth amendment, because his rights were not directly affected by the state statute in question); United States v. Raines, 362 U.S. 17, 22, 80 S.Ct. 519, 523, 4 L.Ed.2d 524 (1960) (a litigant must generally assert his own constitutional rights and immunities).
 
 
 25
 But the situation here does not dictate an extended discussion of this proposition, because Chief Judge (then Judge) Gibbons has already thoroughly ploughed this field in his comprehensive opinion treating another claim of a Philadelphia taxpayer against the city's mayor. In Frissell v. Rizzo, 597 F.2d 840 (3d Cir.), cert. denied, 444 U.S. 841, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979), a citizen and taxpayer brought a first amendment claim to enjoin the mayor from denying customary public advertising to the Philadelphia Bulletin, a daily newspaper, as a reprisal for publication of unfavorable news articles. (Whatever may be the decisions of other courts on first amendment issues, see Basiardanes v. City of Galveston, 682 F.2d 1203, 1211 n. 4 (5th Cir.1983) we believe that Frissell is better reasoned.) We are satisfied that the reasoning and the result set forth in Frissell adequately control the prudential standing issue presented here. In Frissell, the court noted that the Philadelphia Bulletin, the injured party, had not joined as a party plaintiff or brought suit to enjoin the city. The plaintiff was solely a taxpayer resting his claim for relief on the legal rights and interests of a third party. Similarly, in this case no business enterprise or construction worker, those most likely to have suffered injury under the challenged bid specifications, has joined the complaint or brought suit to enjoin the city. The appellants here are solely taxpayers, resting their claim on the legal rights and interests of third parties, to-wit, those business entities and workers not qualifying under the MBE requirements.IV.
 
 
 26
 Appellants argue that the court erred in denying them standing because they clearly qualify under the facts and holdings of Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) and Bowen v. Kendrick, --- U.S. ----, 108 S.Ct. 2562, 101 L.Ed.2d 520 (1988). We conclude that the facts here do not bring this case within the limited precedential authority of those cases.
 
 
 27
 Flast and Bowen are extremely limited holdings. They hold that federal taxpayers have standing to raise establishment clause claims against exercises of congressional power under the taxing and spending power of article I, section 8 of the constitution. Flast was an establishment clause attack on the Elementary and Secondary Education Act of 1965, which allowed federal funds to be used to finance instruction, and purchase textbooks for reading, arithmetic, and other subjects in religious schools. Flast, 392 U.S. at 85-86, 88 S.Ct. at 1945. Bowen, also relying on the establishment clause, attacked the Adolescent Family Life Act which authorized grants to public and non-public private organizations and agencies and provided, inter alia, that a grantee must furnish types of counsel in, and education relating to, family life and problems associated with adolescent premarital sexual relations, a complex problem that requires the involvement of religious and charitable organizations. Bowen, --- U.S. at ----, 108 S.Ct. at 2566-67.
 
 
 28
 Because the establishment and free exercise clauses and article I, section 8 taxing and spending power are not involved here, Flast and Bowen do not serve as precedential authority. Without rehearsing the myriad standing cases since Flast, we note that the leading commentators in federal courts and jurisdiction have succinctly stated: "Fate has not been kind to the Flast decision. In the field of taxpayer standing, it has been limited to very narrow confines." 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3531.1 (1984); see also Bowen, --- U.S. at ----, 108 S.Ct. at 2579; Valley Forge, 454 U.S. at 479, 102 S.Ct. at 762.
 
 V.
 
 29
 Appellants have not satisfied the prudential requirements of standing dictated by Valley Forge, Warth v. Seldin, and Frissell v. Rizzo. Accordingly, we are satisfied with the district court's dismissal of the complaint for the reasons stated. Those reasons have been summarized in Warth v. Seldin and deserve repetition here:
 
 
 30
 Apart from the minimum constitutional mandate, this Court has recognized other limits on the class of persons who may invoke the courts' decisional and remedial powers. First, the Court has held that when the asserted harm is a "generalized grievance" shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction. Second, even when the plaintiff has alleged injury sufficient to meet the "case or controversy" requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interest of third parties. Without such limitations--closely related to Art. III concerns but essentially matters of judicial self-governance--the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights.
 
 
 31
 422 U.S. at 499-500, 95 S.Ct. at 2205-06 (footnotes and citations omitted). We believe that the appellants here assert only a "generalized grievance" that may be shared in substantially equal measure by all or a large class of citizens.
 
 VI.
 
 32
 The judgment of the district court will be affirmed.