### In re MERIDIAN SECURITIES LITIGATION.

**This Document Relates To: Class Actions Only.**

**Civ. A. No. 90–6211.**

United States District Court, E.D. Pennsylvania.

July 22, 1991.

---

Anthony J. Bolognese, Barrack, Rodos & Bacine, Philadelphia, Pa., Mark C. Rifkin, Greenfield & Chimicles, Haverford, Pa., Ruthanne Gordon, Berger & Montague, P.C., Philadelphia, Pa., for plaintiff.

Daniel B. Huyett, Stevens & Lee, Reading, Pa., James G. Wiles, Stevens & Lee, Wayne, Pa., for defendants.

## OPINION

CAHN, District Judge.

In this securities fraud class action, the plaintiffs allege violations of Sections 10(b), 14(a) and 20 of the Securities Exchange Act, 15 U.S.C. §§ 78j(b), 78n(a) and 78t, Rules 10b–5 and 14a–9 of the Securities and Exchange Commission promulgated thereunder, and the common law of negligent misrepresentation.[1] The defendants have moved to dismiss the Consolidated Amended Class Action and Derivative Complaint ("the complaint") for failure to state a claim and failure to plead fraud with sufficient particularity. Individual defendants David E. Sparks and David D. Hoffman have also moved to dismiss the "controlling person" claims brought against them. For the reasons which follow, I shall deny the motions.

## I. BACKGROUND

The allegations of the complaint, which must be taken as true for the purposes of this motion, are as follows. The plaintiffs[2] allege that, from August 16, 1989 through September 26, 1990 ("the Class Period"), the defendants misrepresented and concealed from the investing public the financial condition of Meridian Bancorp, Inc. ("Meridian" or "the bank" or "the company"). The plaintiffs suggest that these misrepresentations occurred in two specific areas. First, the defendants misrepresented the condition and future prospects of Meridian's title insurance companies. Comp. ¶¶ 15, 24–27. Second, the defendants materially overstated Meridian's earnings, assets, and net worth by misrepresenting the adequacy of the Company's loan loss reserves and the nature of its lending practices. Comp. ¶¶ 17, 20–22, 28–31.

The defendants assert that the court must dismiss the action under Fed.R.Civ.P. 12(b)(6) because the plaintiffs have failed to state a claim upon which relief can be granted. Individual defendants David E. Sparks and David D. Hoffman move to dismiss the "controlling persons" claims under the same federal rule. To the extent the plaintiffs have stated actionable claims, the defendants argue that the complaint should be dismissed for failure to satisfy the pleading requirements of Fed.R.Civ.P. 9(b). I will address the 12(b)(6) motions first, then turn to the 9(b) motion.

## II. DISCUSSION

### A. Failure to State a Claim

▪ Under Fed.R.Civ.P. 12(b)(6), "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989). The question before this court is not whether

---

**1.** All derivative claims have been stayed by stipulation.

**2.** The plaintiff class consists of all persons who purchased Meridian's publicly traded securities during the period from August 16, 1989 through and including September 26, 1990. Comp. ¶ 9.

the plaintiffs will ultimately prevail; rather, it is whether they could prove any set of facts in support of their claims that would entitle them to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *In re Midlantic Corp. Shareholder Litig.*, 758 F.Supp. 226, 230 (D.N.J.1990). "To withstand the motion, 'it is not necessary to plead facts upon which the claim is based.'" *Midlantic*, 758 F.Supp. at 230 (citing *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir.1977)).

### 1. Count I: The 10b–5 Claims

#### a. *The Claims Against All Defendants*

The defendants attack the 10(b) pleadings on numerous grounds. The defendants argue first that their expressions of hope or "puffing" cannot constitute material facts within the meaning of Section 10(b) of the Securities Act. Moreover, the complaint "alleges no numbers, no percentages, no dollar signs and no 'hard' targets." D. Brief in Support of Motion to Dismiss ("D. Brief") at 30. The defendants assert that such "soft" statements cannot be actionable under the securities laws in any context.

■ In *Virginia Bankshares, Inc. v. Sandberg*, —— U.S. ——, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991), however, the Court concluded that the material significance of corporate directors' statements of opinions or beliefs "raises no serious question." —— U.S. at ——, 111 S.Ct. at 2757.[3] Moreover, in response to a similar argument regarding "soft" statements, the Court responded,

> It is no answer to argue, as petitioners do, that the quoted statement on which liability was predicated did *not* express a reason in dollars and cents, but focused instead on the "indefinite and unverifiable" term, "high" value, much like the similar claim that the merger's terms

were "fair" to shareholders. The objection ignores the fact that such conclusory terms in a commercial context are reasonably understood to rest on a factual basis that justifies them as accurate, the absence of which renders them misleading. Provable facts either furnish good reasons to make a conclusory commercial judgment, or they count against it, and expressions of such judgments can be uttered with knowledge of truth or falsity just like more definite statements, and defended or attacked through the orthodox evidentiary process that either substantiates their underlying justifications or tends to disprove their existence.

—— U.S. at —— – ——, 111 S.Ct. at 2758–59. The plaintiffs' allegations here are far more specific than those allowed in *Virginia Bankshares*. The plaintiffs here allege that the defendants made specific public statements which 1) misrepresented the quality of Meridian's loan portfolios; 2) overstated the company's earnings, income, and net worth by materially understating its loan loss reserves; 3) misrepresented the value and success of the bank's title companies; and 4) made false projections of future earnings without a reasonable basis at the time they were made. Therefore, the alleged statements are not too "soft" to support a securities fraud claim.

Second, the defendants argue that the plaintiffs have alleged only mismanagement or failure to disclose mismanagement. Such allegations, according to the defendants, cannot support a securities fraud claim. In support of this argument, the defendants rely on *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977) and *In re Craftmatic Sec. Litig.*, 890 F.2d 628 (3d Cir.1989).

In *Santa Fe* the Court dismissed a § 10(b) claim, holding that acts of corporate mismanagement do not violate the securities laws in the absence of deception,

---

**3.** In *Virginia Bankshares,* the plaintiff asserted that the defendants violated Section 14(a) of the Act and Rule 14a–9 by issuing materially misleading statements to ensure the completion of a merger. Although *Virginia Bankshares* involved material misstatements in connection with a proxy statement, the Court has adopted the same standards for disclosure and materiality for Sections 14(a) and 10(b). *Basic, Inc. v. Levinson,* 485 U.S. 224, 231–32, 108 S.Ct. 978, 983–84, 99 L.Ed.2d 194 (1988) (adopting standard of materiality developed in proxy solicitation context for purposes of § 10(b) and Rule 10b–5).

misrepresentation, or nondisclosure. 430 U.S. at 476, 479, 97 S.Ct. at 1302, 1304; *see also Craftmatic*, 890 F.2d at 637. However, it is important to distinguish *"Santa Fe*, in which the Court found no material misrepresentation or omission, from other cases in which the plaintiff alleges the omission of specific material facts." *Craftmatic*, 890 F.2d at 639. In *Virginia Bankshares*, the Court noted that *Santa Fe* is inapplicable where the plaintiffs have alleged a misrepresentation or omission in violation of federal securities laws. — U.S. at —–— n. 6, 111 S.Ct. at 2758 n. 6. The plaintiffs here do not allege mere mismanagement; they allege fraud disguised by materially misleading public statements.

■ The defendants then argue that they had no duty to disclose the possible sale of the title companies. Although the defendants are correct that silence, "absent a duty to disclose, is not misleading under Rule 10b–5," *Basic, Inc.*, 485 U.S. at 239 n. 17, 108 S.Ct. at 987 n. 17, that axiom is inapplicable to this case. The plaintiffs have alleged that Meridian differentiated itself from other troubled bank holding companies by emphasizing its successful title insurance operations. When it became apparent to the defendants that the poorly performing companies would have to be sold, they had a duty to correct their prior statements regarding Meridian's title insurance operations, if those statements were material. *See In re Phillips Petroleum Sec. Litig.*, 881 F.2d 1236, 1245 (3d Cir. 1989); *see also Craftmatic*, 890 F.2d at 641 (in addition to duty to disclose specific information required by law, securities laws "impose upon defendants the duty to disclose any material facts that are necessary to make disclosed material statements, whether mandatory or volunteered, not misleading"). Therefore, this court rejects the defendants' assertion that Meridian had no duty to disclose the possible sale of the title insurance companies, as well as the defendants' similar assertion that they had no duty to revise public statements between quarterly reports.

■ Finally, the defendants assert that disclosure of developments regarding the title companies would have been immaterial as a matter of law. A fact is material if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic*, 485 U.S. at 231–32, 108 S.Ct. at 983 (citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976)). "Only when the disclosures or omissions are so clearly unimportant that reasonable minds could not differ should the ultimate issue of materiality be decided as a matter of law." *Craftmatic*, 890 F.2d at 641. This court will not hold that the plaintiffs could prove no set of facts which would support a finding that the omission disclosure was material. Therefore, the plaintiffs' allegation must survive the defendants' motion to dismiss.

b. *The "Controlling Person" Claims Against Sparks and Hoffman*

■ Defendants Sparks and Hoffman, by separate motion, have asked this court to dismiss the § 20(a) claims against them. Section 20(a) of the Exchange Act, which governs controlling person liability, provides in relevant part:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). Sparks is the vice chairman and chief financial officer of Meridian, and Hoffman is an executive vice president of the company. Thus, each defendant was in a position "with access to information and to policy making processes during the class period." *Midlantic*, 758 F.Supp. at 236. As the *Midlantic* court noted, Third Circuit precedent requires the court to give

consideration to the powers inherent in the defendants' positions:

Substantial weight must be given to the authority, or rather the potential authority, inherent in such corporate positions, considered separately or in concert. Furthermore, prior to discovery, plaintiff can hardly be able to plead the precise culpable conduct of each individual defendant. At this stage of the litigation, plaintiffs have sufficiently pled the individual defendants' power to exercise control.

758 F.Supp. at 236. This court will not dismiss the "controlling person" claims against Sparks and Hoffman at this stage of the litigation.

■ Sparks and Hoffman also argue that the pleadings are insufficient to support a claim of aiding and abetting liability against them. The plaintiffs must prove three elements to establish aiding and abetting liability for a securities violation: 1) securities law violations by a primary actor, 2) knowledge of the fraudulent conduct on the part of the person charged with aiding and abetting, and 3) substantial participation in the perpetration of the fraud by the person charged. *See Walck v. American Stock Exch., Inc.*, 687 F.2d 778, 791 (3d Cir.1982), *cert. denied*, 461 U.S. 942, 103 S.Ct. 2118, 77 L.Ed.2d 1300 (1983) (citing *Landy v. FDIC*, 486 F.2d 139, 162 (3d Cir.1973), *cert. denied*, 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974)); *see also Midlantic*, 758 F.Supp. at 237. Construing the pleadings in the favor of the non-moving party, this court finds that the plaintiffs have adequately pled all of these elements. Therefore, the claims against Sparks and Hoffman will stand.

### 2. Count II: The 14a–9 Claims

The defendants urge that this court dismiss Count II of the complaint, in which plaintiffs Weiss, Moore, Lepow Equities Corporation and Plato Paper Products, Inc. ("the Proxy Plaintiffs") allege that the defendants committed violations of § 14 of the Act. The defendants offer three reasons for dismissal. First, the defendants argue that the allegations of material misstatements and omissions rest on the same factual pleadings are insufficient to support a 10b–5 claim. Second, the defendants assert that federal law does not require them to confess mismanagement in proxy materials. Third, according to the defendants, there is no "transaction causation" between the alleged dissemination of false and misleading statements and the injury claimed.

As the defendants recognize, this court's determination that the allegations in the complaint are legally sufficient for a 10b–5 claim establishes their sufficiency for a § 14 claim. D. Brief at 78 ("there is no different standard for proxy claims under SEC Rule 14a–9, as opposed to 10b–5"). Therefore, the defendants' first argument fails.

■ The second argument, that there is no duty to confess mismanagement in proxy materials, must fail after *Virginia Bankshares*. In that case, the Court noted: "Subjection to liability for misleading others does not raise a duty of self-accusation; it enforces a duty to refrain from misleading." —— U.S. at —— n. 7, 111 S.Ct. at 2761 n. 7. The plaintiffs assert that the proxy materials failed to disclose "the utter failure of the individual defendants and the co-directors to cause Meridian to disseminate reports to the investing public and to file with the SEC documents in full compliance with the federal securities laws, and to continue to cause the Company to overstate its earnings, assets and net worth by under-reserving for loan losses...." Comp. ¶ 50.

The defendants' reliance on case law establishing that there is no duty to disclose mismanagement is misplaced. The plaintiffs here do not allege mere mismanagement; they allege fraudulent misstatements and omissions designed to support an inflated value for Meridian stock. Therefore, the plaintiffs allege that the proxy statement failed to disclose facts that a reasonable shareholder would consider important in deciding how to vote. *TSC Indus., Inc. v. Northway Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976); *see also Virginia Bankshares*, —— U.S. at ——–——, 111

S.Ct. at 2756–58. Such allegations support the claim that the defendants violated proxy regulations.

 This court must also reject the defendants' assertion that there is insufficient "transaction causation." A securities plaintiff makes a sufficient showing of causal relationship between the violation and the injury if she proves that "the proxy solicitation itself, rather than the defect in the solicitation materials, served as an essential link in the accomplishment of the transaction." *Basic*, 485 U.S. at 244, 108 S.Ct. at 990 (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 385, 90 S.Ct. 616, 622, 24 L.Ed.2d 593 (1970)). Where, as here, the harm alleged is the election of corporate directors on the basis of false and misleading proxy statements, the plaintiffs need not prove that the omissions or misstatements decisively affected voting. 485 U.S. at 244, 108 S.Ct. at 990.

### 3. Count III: Negligent Misrepresentation

 The defendants assert that they could not have committed the tort of negligent misrepresentation because they had no relationship with the plaintiffs giving rise to any duty. In *Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir.), *cert. denied sub nom., Wasserstrom v. Eisenberg*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985), however, the Court of Appeals held that when information is circulated for the specific purpose of inducing members of a particularized class to rely thereupon in making an investment, a duty of due diligence in the maker of the statements is created. That duty exists even without a specific formal relationship between the investors and the person who makes the statements. 766 F.2d at 780 (applying Pennsylvania law). Therefore, plaintiffs have adequately alleged a cause of action for common law negligent misrepresentation.

Counts 1, 2, and 3 of the complaint survive the motions to dismiss under Rule 12(b)(6). Having addressed the arguments put forth by the defendants in support of their 12(b)(6) motion, I turn now to their assertion that the defendants have not pleaded fraud with the particularity required by Rule 9(b).

### B. *The Pleading Requirements of Rule 9(b)*

Fed.R.Civ.P. 9(b) provides:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

In *Craftmatic*, the Court of Appeals discussed the application of Rule 9(b) to securities fraud cases:

Courts must be sensitive to the fact that application of Rule 9(b) prior to discovery "may permit sophisticated defrauders to successfully conceal the details of their fraud." Particularly in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs.... Thus, courts have relaxed the rule when factual information is peculiarly within the defendant's knowledge or control.

890 F.2d at 645 (citation omitted). The *Craftmatic* court "expressly declined to adhere to the rigid enforcement of Rule 9(b) in securities fraud cases." *Midlantic*, 758 F.Supp. at 232 (citing *Craftmatic*, 890 F.2d at 645–46).

 *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786 (3d Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985), established that, "where the complaint had identified specific 'pieces of machinery that were the subject of the alleged fraud,' the plaintiff had satisfied Rule 9(b) by pleading the circumstances constituting the fraud." *Midlantic*, 758 F.Supp. at 230–31. The purpose of the rule is "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville*, 742 F.2d at 791. As long as the allegations of fraud reflect precision and some measure of substantiation, the complaint is adequate. *Id.*

 In their extremely detailed complaint, the plaintiffs here have identified the source of the false and misleading statements or omissions (Comp. ¶¶ 5–6, 19–38); the nature of the false and misleading statements or omissions (Comp. ¶¶ 19–38); the location of the false and misleading statements or omissions (Comp. ¶¶ 19–38); the dates on which the false and misleading statements or omissions occurred (Comp. ¶¶ 19–38); and the manner in which the statements or omissions were false and misleading (Comp. ¶¶ 47(a)–(j)). The defendants have more than adequate notice of the alleged fraud. Furthermore, the allegations are precise enough to support a claim for fraud. *Midlantic,* 758 F.Supp. at 231 ("If the pleaded facts and supporting allegations permit the inference of a colorable claim for fraud and afford the defendant notice as to which actions or communications are alleged to have been fraudulent, the complaint will withstand a motion to dismiss.").

The defendants also argue that the plaintiffs' failure to distinguish among the defendants should lead to dismissal of the complaint. This court declines to require the plaintiffs to differentiate further among the defendants at this stage. The plaintiffs have identified the position and role of each individual defendant within Meridian. As Judge Sarokin noted in *In re First Fidelity Bancorporation Sec. Litig.,* [1990 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,299, 1989 WL 222603 (D.N.J.1990), it would be virtually impossible for the plaintiffs to delineate which defendants were responsible for which acts prior to discovery. *Id.* at 96,392.

Finally, the defendants attack the plaintiffs' pleadings with regard to scienter. Rule 9(b) clearly states that malice, intent, knowledge and other conditions of mind may be averred generally. Moreover, drawing all reasonable inferences from the complaint in favor of the non-moving party, this court concludes that the plaintiffs have adequately pleaded scienter.

For the foregoing reasons, the defendants' motion to dismiss based on Rule 9(b) must fail.

### III. CONCLUSION

Based upon the foregoing discussion, this court shall deny the defendants' Motion to Dismiss the action and the Motion to Dismiss "Controlling Person" claims of defendants David E. Sparks and David D. Hoffman.