**Susan Elaine SMITH**

v.

**THE NATIONAL RAILROAD PAS-SENGER CORPORATION ("AMTRAK").**

No. CIV. A. 98–2816.

United States District Court, E.D. Pennsylvania.

Nov. 4, 1998.

Alice W. Ballard, Samuel & Ballard, P.C., Philalphia, PA, for Plaintiff.

William J. Delany, Morgan, Lewis & Bockius, Judith E. Harris, Morgan, Lewis and Bockius, Philadelphia, PA, Kenneth D. Klein-

man, Stevens & Lee, John F. Ward, Stevens & Lee, Wayne, for Defendants.

### MEMORANDUM

BARTLE, District Judge.

Plaintiff Susan Elaine Smith ("Smith") has filed a complaint against the National Railroad Passenger Corporation ("Amtrak") alleging breach of common law duty to warn and quid pro quo sexual harassment under the Fifth Amendment. At the heart of plaintiff's complaint is her allegation that Amtrak should have warned her about the perfidy of Fred Weiderhold ("Weiderhold"), a fellow Amtrak employee who reneged on his promise to marry her.[1] Amtrak has filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

In considering a Rule 12(b)(6) motion, the court may rely upon the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993), *cert. denied*, 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994). All well-pleaded factual allegations in the complaint are assumed to be true and are viewed in the light most favorable to the nonmovant. *Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989). A complaint should be dismissed pursuant to Rule 12(b)(6) only where it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon*, 467 U.S. at 73, 104 S.Ct. 2229.

We accept the following facts as true for purposes of the pending motion. At all times relevant Weiderhold was the Inspector General of defendant Amtrak. From 1988 to March, 1996, Smith was a trainer in Amtrak's Human Relations Department. During their employment at Amtrak, Weiderhold and Smith "became involved in a personal and ultimately, intimate relationship" and planned to marry. In reliance on Weiderhold's misrepresentations that they could not work together at Amtrak if they "were going to continue a serious relationship and marry," she resigned her position. Several months later, in early June, 1996, she learned that Weiderhold had "misrepresented himself ... and had never intended to marry her." When she sought reemployment with Amtrak, it refused to rehire her.

■ Plaintiff alleges that Amtrak breached its common law duty to warn her about Weiderhold's deceitful nature. Generally, one does not have a duty to warn another without a contractual agreement to do so or "special relationship" among the parties. *See Ouinn v. Lord, Bissell & Brook*, Civ. A. No. 91–2992, 1991 WL 142669 at *4 (E.D.Pa. July 22, 1991), *aff'd*, 958 F.2d 364 (3d Cir. 1992); *Huddleston v. Infertility Ctr.*, 700 A.2d 453, 459 (Pa.Super.1997). No contract requiring Amtrak to provide warnings has been alleged. A "special relationship" is " 'a confidential or fiduciary relationship' where 'one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms ....' " *L & M Beverage Co. v. Guinness Import Co.*, Civ. A. No. 94–4492, 1995 WL 771113 at *5 (E.D.Pa. Dec. 29, 1995).

■ We recognize that there are situations where an employer may have a duty to warn others about an employee or former employee. *See Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 86 (3d Cir.1987) (citing *Shaffer v. National Can Corp.*, 565 F.Supp. 909 (E.D.Pa.1983)). An employer, for example, may be found negligent for failure to warn if it knew or should have known about an employee's or ex-employee's violent propensities. *See Coath v. Jones*, 277 Pa.Super. 479, 419 A.2d 1249 (Pa.Super.1980). We have found no case, and none has been cited

---

1. Plaintiff's complaint originally contained claims for breach of fiduciary duty under ERISA, 29 U.S.C. § 1104, and for violation of a "property right in the expectation of continued employment at Amtrak" under the due process clause of the Fifth Amendment. She has now withdrawn these claims, and we need not consider them

further. Plaintiff had also brought claims against Fred Weiderhold which we dismissed in our Memorandum and Order dated October 5, 1998. Plaintiff had sued him for what in essence was breach of contract to marry, a cause of action long ago abolished in Pennsylvania.

to us, which goes so far as to hold that an employer has a duty to warn about the insincerity of an employee's courtship of another employee or his dishonesty in promising to marry that employee. The absence of any authority is not surprising. Pennsylvania by statute abolished the cause of action for breach of promise to marry in 1935. 23 Pa. Cons.Stat. Ann. § 1902. Throughout the years since that date the courts of the Commonwealth have remained steadfast against any attempt to undermine or evade the will of the General Assembly by the use of artful pleading to craft different causes of action which are in essence the same as breach of contract to marry. *See, e.g., Ferraro v. Singh,* 343 Pa.Super. 576, 495 A.2d 946, 950 (Pa.Super.1985). Under the circumstances, we think it would be unlikely for Pennsylvania to allow a scorned party to sue her former suitor's employer for failure to warn when she is prohibited from suing that same former suitor in his own right. There is simply no "special relationship" between Amtrak and plaintiff under the facts pleaded. We conclude that Amtrak did not have a common law duty to warn plaintiff about Weiderhold's allegedly treacherous nature in matters of the heart.

■ Next, plaintiff turns to federal law for relief. She claims that Amtrak is liable because its employee Weiderhold subjected her to "quid pro quo" sexual harassment. The Supreme Court has ruled that Amtrak "is an agency or instrumentality of the United States for the purpose of individual rights guaranteed against the Government by the Constitution." *Lebron v. National R.R. Passenger Corp.,* 513 U.S. 374, 394, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995). Plaintiff does not proceed under Title VII, 42 U.S.C. §§ 2000e *et seq.* Instead, plaintiff asserts a Fifth Amendment right under the due process clause to be free from gender discrimination. *See Davis v. Passman,* 442 U.S. 228, 243–244, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). She maintains that right was violated because Weiderhold's "sexual conduct toward ... [her] was the legal equivalent of 'unwelcome,' in that her acquiescence in that conduct was secured only by Weiderhold's deceit." In essence, she is claiming that in hindsight she would not have engaged in a "personal and ultimately, intimate relationship" with Weiderhold if she had known his promises, including his promise to marry her, were false.

Even assuming she can ground her claim on the Fifth Amendment, we see no reason not to apply the same standard used in Title VII cases for her "quid pro quo" sexual harassment claim. As our Court of Appeals has explained, "quid pro quo" sexual harassment exists when "(1) submission to ... [unwelcome sexual advances] is made either explicitly or implicitly a term or condition of an individual's employment [or] (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual ...." *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1296 (3d Cir.1997).

In reading the complaint, it is clear that plaintiff had a willing relationship with a co-employee she agreed to marry. Significantly, plaintiff never avers that Weiderhold's behavior toward her was displeasing at any time from the relationship's inception in October, 1995 until her resignation from Amtrak on March 29, 1996. It was only thereafter that plaintiff learned of his alleged duplicity. While she may now regret this chapter in her life, she cannot deem unwelcome retroactively what at the time she welcomed. Again, she has cited no cases which support her novel contention that Weiderhold's alleged perfidy was the "legal equivalent of 'unwelcome'" sexual conduct. We conclude that plaintiff does not meet the first prong of the "quid pro quo" standard.

Nor has plaintiff alleged that her submission to Weiderhold's advances was an implicit or explicit term of employment or was used as a basis for employment decisions. In early 1996, Weiderhold allegedly told plaintiff that they could not work together at Amtrak if they were married. A short time later, on March 29, 1996, plaintiff resigned from Amtrak "in reliance on Weiderhold's representations (1) that he and she could not work together at Amtrak if they were going to be married, and (2) that he could and would marry her ...." The terms and condi-

tions of plaintiff's employment with Amtrak were affected by her acceptance of her swain's marriage proposal and his comments about Amtrak's employment policy, not by any unwelcome sexual deportment.

In conclusion, plaintiff's complaint does not state a claim for breach of common law duty to warn, or for quid pro quo sexual harassment under the Fifth Amendment. Although an employer in modern times has many obligations not dreamed of in yesteryear, things have not moved to the point under state or federal law where an employer becomes responsible for warding off welcome office romances and marriage proposals which ultimately go awry. There are some unfortunate events in life for which the courts have no remedy. Plaintiff's situation, as pleaded, is one of them. We will grant the motion of Amtrak to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.